THE CAMERON COAL COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(JOHN M. JACKSON, Defendant in Error.)

*Opinion filed October 22, 1927.*

1. WORKMEN'S COMPENSATION—*what must be shown to justify an award for permanent total disability.* To justify an award for permanent total incapacity the claimant must show not only that he has been injured and is entitled to compensation for such injury, but he must also by evidence show that his injuries will be reasonably certain to leave him permanently totally incapacitated from pursuing his usual and customary line of employment.

2. SAME—*when award for permanent total disability is not justified.* An award for permanent total disability is not justified where the weight of the evidence shows that the employee is suffering from chronic appendicitis, it being a disputed question whether it was brought on by the alleged injury, caused by lifting rock in a mine, and where the evidence does not show that the affliction is incurable or that with proper treatment the claimant will be totally and permanently physically incapacitated for the performance of manual labor.

WRIT OF ERROR to the Circuit Court of Williamson county; the Hon. D. T. HARTWELL, Judge, presiding.

LEON A. COLP, (SAMUEL A. HARPER, of counsel,) for plaintiff in error.

A. W. KERR, and GEORGE R. STONE, for defendant in error.

Mr. CHIEF JUSTICE HEARD delivered the opinion of the court:

On November 13, 1924, John M. Jackson, while employed by the Cameron Coal Company as a day laborer in its mine, attempted to lift or move a large stone weighing about 400 pounds, and in doing so slipped upon some loose stones and dirt and claims to have thereby injured himself

through the right side and hips, extending into his groin and causing pain in that part of his body. He reported his injury to the mine office and was sent by the company to Dr. Zach Hudson for treatment. Dr. Hudson treated him until November 28, 1924, and thereafter Dr. L. H. Green treated him. Jackson claims to be totally and permanently disabled from work. The company refused to pay any compensation, and upon application for adjustment of claim the arbitrator rendered a decision in favor of Jackson for the payment of $14 per week for 267-6/7 weeks for permanent and complete disability and the further sum of $154 for vexatious and unreasonable delay in the payment of compensation. Upon review the Industrial Commission heard additional evidence on behalf of both parties and reversed the decision of the arbitrator and entered an award in favor of the applicant for $14 per week for a period of 267-6/7 weeks and thereafter a pension for life of $25 per month for total and permanent disability from work. The circuit court of Williamson county quashed a writ of *certiorari* and confirmed the award of the Industrial Commission. This writ of error has been allowed to review the record.

The following is the substance of defendant in error's testimony before the arbitrator: He is forty years old and has been working in coal mines for the last twenty-five or twenty-six years. On November 13, 1924, he was timbering and cleaning rock, and while assisting in moving rock slipped or slid on some loose rock and tore something about his right side, in the right groin. He sat down for about ten minutes and then walked out of the mine and reported his injury at the office and was given an order to Dr. Hudson, who treated him for his injury. He went to Dr. Green on November 28, and when Dr. Hudson learned that Dr. Green was treating him he was released by Dr. Hudson on December 12. He cannot work now—has no action in his right leg, and his right groin pains him. He did not have

any trouble in that region before he attempted to lift the rock and slipped. He is getting very little better, if any. He has made repeated demands for compensation but none has been paid him by the company. Before the commission he testified as follows: "It comes and goes. If I don't stoop any I get to feeling pretty well. If I stoop I get worse and I feel the misery all the way up. It runs up under my arm. The seat of misery has changed since hearing before arbitrator. Where the misery was I have put a band on me holding that way up and I have no misery there. That is over seat of appendix. My misery now is right above the bone. It is the pelvis bone, or whatever they call it. At times I take cutting pain from sitting, and things like that—right between the hip and ribs. If I go stooping too much it goes cracking inside of me, up towards the arm. I tried to work a couple of days at mine and managed two hours and one-half and had to quit. I sawed wood one day and spaded ten foot square ground. I did this work a few days ago—all the work I have done, except carrying bucket of coal or kindling. My last treatment was on April 1 by Dr. Green, at which time he released me for light work. I have been going to Dr. Green on own expense. I have never been tendered an operation by the company up to this time. I am wearing a belt around abdomen since about February 26. Since then have felt improvement in appendix region. The belt is about eight inches wide. Dr. Green directed me to wear this belt—said it would help me. Dr. Baker advised me to do that second day I was hurt."

Dr. L. H. Green testified for the defendant in error. He commenced treating him on November 28—fifteen days after the alleged injury. On that day he examined him and found considerable amount of inflammatory condition in the right side of the abdomen, considerable amount of gastric symptoms and muscles being in contraction. He diagnosed his condition as chronic appendicitis. He stated

that all cases of appendicitis are caused by an inflammatory condition of the appendix, and that an injury could set up an inflammatory condition. The word "chronic" means long continuation, and chronic cases are not as severe as acute cases. He did not know whether defendant in error was affected with appendicitis before the date of the alleged injury, but he was of the opinion that the injury as de-scribed by defendant in error had something to do with bringing on the appendicitis, or lighting it up if it had a pre-existing condition. The condition might get better or might get worse, but in his opinion the defendant in error would be able to return to work if he were operated on, and he recommended an operation. On cross-examination he testified that the inflammatory condition was caused by a germ, but on re-direct examination he testified that he thought defendant in error's chronic appendicitis was due to trauma.

Dr. Hudson testified that he treated defendant in error until about the first day of December and that he did not release him, but that defendant in error told him he was being treated by Dr. Green and was not taking witness' treatments.

Dr. J. B. Moore testified for plaintiff in error. In answer to a hypothetical question covering the testimony of defendant in error and Dr. Green, he stated that it would not be possible for muscular contraction, caused by a strain or lift, to implant a germ and cause chronic appendicitis, and that it would not be possible, in his opinion, to cause chronic appendicitis by attempting to move the rock as described by defendant in error. He gave as his reason that the appendix is naturally protected. The tightening of the abdominal muscles preparatory to a lift protects the inter-abdominal muscles, and the stomach, liver, bowel or bladder could be more quickly ruptured or injured than the appendix. In his opinion a lift or slip could not cause traumatic appendicitis, and chronic appendicitis would have

to exist more than fifteen days to be called chronic, and that an injury such as described by defendant in error could have no effect on chronic appendicitis.

Two major questions are presented by this record: First, is the claimant suffering as the result of an accidental injury received in the course of his employment? Second, is his disability total and permanent? As to the first of these questions we express no opinion. The concensus of the medical testimony is to the effect that claimant is suffering from chronic appendicitis. There is no evidence in the record that appendicitis is an incurable disease, nor is it shown that with proper treatment the claimant will be totally and permanently physically incapacitated for the performance of manual labor. To justify an award for permanent total incapacity the claimant must show not only that he has been injured and is entitled to compensation for such injury, but he must also show, by evidence, that his injuries will be reasonably certain to leave him permanently totally incapacitated from pursuing his usual and customary line of employment. (*O'Gara Coal Co.* v. *Industrial Com.* 320 Ill. 191.) There is in the record no basis for an award for permanent total disability and a pension for life.

The judgment of the circuit court will be reversed and the cause remanded, with directions to set aside the award and remand the cause to the Industrial Commission for a further hearing.

*Reversed and remanded, with directions.*